# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MICHAEL DUNN,                )     Case No. 1:24-cv-00303
)
       Plaintiff,         )     Judge J. Philip Calabrese
)
v.                        )     Magistrate Judge
)     Jennifer Dowdell Armstrong
ANN PIETRASZKIEWICZ, *et al.*,    )
)
       Defendants.     )
)

## OPINION AND ORDER

This case arises out of the arrest and prosecution of Plaintiff Michael Dunn for alleged domestic violence and burglary against his ex-girlfriend. After the State court dismissed the charges against him, Plaintiff brought suit in State court without a lawyer. His lawsuit alleged various civil rights violations against five Defendants: Officers Ann Pietraszkiewicz and John Marincek, who were responsible for his arrest; Sergeant Gregory Williams, who took part in the investigation; Assistant Prosecuting Attorney Margaret Graham, who litigated the criminal case against him; and Judge Daniel Gaul, who presided over his criminal case. The prosecutor and judge moved to dismiss. Then, the officers timely removed this action to federal court before filing their own motion to dismiss. In this ruling, the Court takes up both motions.

## STATEMENT OF THE FACTS

On Defendants' motions to dismiss, the complaint alleges the following facts, which the Court accepts as true and construes in the light most favorable to Plaintiff, as it must in the present procedural posture. On a motion to dismiss, the Court's

inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). In this case, Plaintiff attached to his brief several documents providing additional factual background. (ECF No. 6-1; ECF No. 6-2; ECF No. 6-3; ECF No. 6-4.) Defendants did not object to consideration of these materials. (*See, e.g.*, ECF No. 7, PageID #192.) Because these documents are integral to the allegations of the complaint, and arguably matters of public record in any event, the Court considers these documents without converting the motion to dismiss into one for summary judgment.

### A. Initial Investigation

On December 18, 2019, Officers Pietraszkiewicz and Marincek responded to a domestic violence complaint involving the alleged victim and Plaintiff Michael Dunn, the alleged assailant. (ECF No. 1-1, ¶ 7, PageID #8.) When they arrived, the officers could not locate the suspect. (ECF No. 6-1, PageID #185.) The alleged victim advised the officers that Mr. Dunn entered her residence while she was outside and that the two began arguing, which escalated to them shoving each other. (ECF No. 1-1, ¶¶ 9–11, PageID #8.) She claimed that Mr. Dunn allegedly grabbed her hair and choked her. (*Id.*, ¶ 11, Page ID #8.) The alleged victim told officers that she poured hot sauce on Mr. Dunn and chased him from the residence with a four-foot carpenter's level. (*Id.*, ¶ 12, PageID #9.) A neighbor advised the officers that he believed the alleged victim was moving furniture and "could not hear her asking for help." (*Id.*, ¶¶ 13–14; ECF No. 6-1, PageID #185.)

The officers reported that the alleged victim refused medical attention, was slurring her words, and appeared to be intoxicated. (ECF No. 1-1, ¶ 15; ECF No. 6-1, PageID #185.)  Further, based on the police report, the alleged victim's "story was inconsistent as she described what had occurred," and "she had no apparent signs of injuries" that the officers could see. (ECF No. 1-1, ¶ 16; ECF No. 6-1, PageID #185.)

On December 19, 2019, Sergeant Williams—a detective at the time—was assigned to investigate the matter and, in doing so, spoke with the alleged victim and took pictures of her injuries. (ECF No. 1-1, ¶¶ 17–18, PageID #9; ECF No. 6-3, PageID #188.)  That day, the alleged victim signed a "no prosecution" form, as well as a domestic violence waiver, stating that she did not "want to deal with the process." (ECF No. 6-2, PageID #186.)  Later, Sergeant Williams reviewed the case with the prosecutor's office, seeking a felony domestic violence charge. (ECF No. 1-1, ¶ 20, PageID #9–10.)

### B.    Indictment and Prosecution

On January 27, 2020, Mr. Dunn was indicted for both burglary and domestic violence, in violation of Section 2911.12(A)(1) of the Ohio Revised Code and Section 2919.25(A), respectively. (*Id.*, ¶ 21, PageID #10.)  After seven days of pretrial detention, on February 6, 2020, the State court released Mr. Dunn on bond. (*Id.*, ¶¶ 22–24, PageID #10.)

On September 24, 2020, Mr. Dunn was taken into custody, and he remained in custody for nearly a year and a half—until February 23, 2022. (*Id.*, ¶¶ 25–26, PageID #10.)  On his release, Mr. Dunn was placed on house arrest enforced with electronic monitoring for over seven months—until November 7, 2022, when the burglary and

domestic violence charges were ultimately dismissed on the State's oral motion.  (*Id.*, ¶¶ 26–27, PageID #10.)

## STATEMENT OF THE CASE

Based on these events, Plaintiff filed a *pro se* complaint in the Cuyahoga County Court of Common Pleas (Case No. 23-cv-989140), raising claims against each Defendant in both their individual and official capacities under 42 U.S.C. § 1983. (ECF No. 1-1, PageID #5.)  Counts One through Three bring claims against Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams for false arrest and false imprisonment.  (*Id.*, ¶¶ 28–52, PageID #11–15.)  Counts Four and Five bring claims against Ms. Graham, the prosecutor, and Judge Gaul for false imprisonment.  (*Id.*, ¶¶ 53–68, PageID #16–18).  Counts Six through Ten bring claims against each Defendant for malicious prosecution.  (*Id.*, ¶¶ 69–92, PageID #19–26.)  In his complaint, Plaintiff seeks both compensatory and punitive damages.  (*Id.*, ¶¶ 93–97, PageID #26–28.)

In State court, the prosecutor and the judge moved to dismiss the complaint. (ECF No. 1-2, PageID #75.)  Plaintiff opposed the motion.  (*Id.*, PageID #89.)  Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams timely removed this action to federal court under 28 U.S.C. § 1441(a) based on federal question jurisdiction. (ECF No. 1, ¶¶ 2–4, PageID #2.)  Ms. Graham and Judge Gaul consented to the removal.  (*Id.*, ¶ 2; ECF No. 1-4, PageID #120.)  Then, Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams moved to dismiss.  (ECF No. 3.)  Each motion to dismiss has been fully briefed.

4

## ANALYSIS

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which a court may grant relief.  Fed. R. Civ. P. 12(b)(6).  A motion under Rule 12(b)(6) tests "the plaintiff's cause of action as stated in the complaint," and is "not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005).  A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555, 557 n.5.

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor.  *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  But a pleading must offer more than mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations."  *Eidson v.*

*Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be.  *Iqbal*, 556 U.S. at 678 (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678–79.

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers, *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Even a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid dismissal.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## I.     The Motion to Dismiss of the Prosecutor and the Judge

The prosecutor and the judge move to dismiss Plaintiff's Section 1983 claims against them for false imprisonment and malicious prosecution, arguing that (1) the statute of limitations bars Plaintiff's false imprisonment claim; (2) Plaintiff's complaint fails to state on its face a claim for malicious prosecution; and (3) Defendants have immunity against this suit in their official and individual

capacities.  (ECF No. 1-2, PageID #76.)  The Court begins and ends its analysis with the last issue, involving judicial and prosecutorial immunity.

### I.A.    Official Capacity Claims

An official capacity claim "generally represents only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  A suit against a State official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996).

Under Ohio law, the determination whether a political subdivision is immune from liability requires a "three-tiered analysis." *Ruffin v. Cuyahoga Cnty.*, No. 1:16-cv-640, 2016 WL 4543144, at *3 (N.D. Ohio Aug. 31, 2016) (citing *Lambert v. Clancy*, 125 Ohio St. 3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶¶ 8–9).  In the first tier, Ohio law grants general immunity:  "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  Ohio Revised Code § 2744.02(A)(1).  At the second tier, the court examines whether any of the five exceptions in Section 2744.02(B) to the grant of general immunity apply.  *See Lambert*, 2010-Ohio-1483, ¶ 9.  Should an exception apply, the third tier analyzes the defenses to liability in Section 2744.03, which may "reinstate immunity." *Id.*

Plaintiff offers no argument about the availability of official immunity under Ohio law.  (*See* ECF No. 1-1, ¶¶ 53–68 & 77–92, PageID #16–18 & 23–26; ECF

No. 1-2, PageID #97–98.)   Instead, Plaintiff cites Section 2744.03(A)(1) and (2), stating, without any further explanation, that these statutes provide the reasons why "Defendants' arguments are misplaced."  (ECF No. 1-2, PageID #98.)   But these statutes reinstate immunity if an exception to immunity applies.   So, Plaintiff's position begs the question.   In *Ruffin*, the court found that Section 2744.02(A) prohibited the plaintiff from bringing claims against the defendants in their official capacities because "plaintiff ha[d] not shown or even argued that any of the exceptions to liability in § 2744.02(B) apply." *Ruffin*, 2016 WL 4543144, at *4.  Such is the case here.   Because Plaintiff has failed to make any argument that an exception under Section 2744.02(B) applies, Section 2744.02(A) precludes Plaintiff from bringing his claims against the prosecutor and the judge in their official capacities.

## I.B.   Individual Capacity Claims

The prosecutor and judge contend that they also have absolute immunity against suit in their individual capacities.  (ECF No. 1-2, PageID #85–87.)  The Court addresses each in turn.

### I.B.1. Absolute Judicial Immunity

Judicial officers are generally "absolutely immune from civil suits for monetary damages under § 1983 for their judicial actions" because judicial officers should be able to make "controversial decisions and act upon their convictions" in their judicial capacity without being subject to personal liability.  *Cooper v. Parrish*, 203 F.3d 937, 944–45 (6th Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978)).  Defendants bear the burden of establishing

8

absolute immunity.  *See Burns v. Reed*, 500 U.S. 478, 486 (1991); *Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2012).

Absolute immunity for judicial officers does not apply in only two circumstances:  (1) "actions not taken in the judge's judicial capacity" and (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11–12 (citing *Forrester v. White*, 484 U.S. 219, 227–29 (1988); *Stump*, 435 U.S. at 356–57, 360; *Bradley v. Fisher*, 13 Wall. 335, 347 (1872)).  A judge's act counts as judicial where "it is a function normally performed by a judge," and the parties "dealt with the judge in his judicial capacity."  *Stump*, 435 U.S. at 362.  In making this determination, courts look to "the particular act's relation to a general function normally performed by a judge."  *Mireles*, 502 U.S. at 288–89.  Generally, where a court has "some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes."  *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997) (citing *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985)).

Plaintiff alleges that the judge handling his criminal case "granted the Prosecution's oral motion to dismiss the Burglary and Domestic Violence charges against Plaintiff" and that the judge "should have known" through the course of discovery and the pandemic that "Plaintiff would suffer incarceration for eighteen months . . . in exchange for a misdemeanor plea for case disposal, only to dismiss the case nine months later."  (ECF No. 1-2, PageID #99; ECF No. 1-1, ¶ 27, PageID #10.)

When presiding over a criminal matter, such as Plaintiff's, a judge discharges the "general function[s] normally performed by a judge."  *Mireles*, 502 U.S. at 288–89.

Those functions include disposing of parties' motions.  The "paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court." *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (quoting *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989)).  Deciding a case is "the quintessential judicial act." *Id.*  Here, the Cuyahoga County Court of Common Pleas had jurisdiction over the criminal charges against Mr. Dunn.  Therefore, neither exception to judicial immunity applies.  The judge enjoys absolute judicial immunity against Plaintiff's claims against him in his individual capacity.

Plaintiff argues that the judge should be found liable to his Section 1983 claims against him in his individual capacity because he is not entitled to qualified immunity.  (ECF No. 1-2, PageID #98–100.)  But the judge has absolute immunity, such that the Court need not determine whether qualified immunity also bars Plaintiff's claims.

### I.B.2. Absolute Prosecutorial Immunity

Generally, a prosecutor's actions in bringing a criminal case are "intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  In *Imbler*, the Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 431.  Prosecutorial immunity does not extend to certain investigatory or administrative acts. *Id.* at 431 n. 33. These functions "do not relate to an advocate's preparation for the initiation of a prosecution or judicial

10

proceedings," and therefore "are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citing *Burns*, 500 U.S. at 494–96).

Plaintiff alleges that the prosecutor "lacked probable cause to pursue and prosecute charges in the resulting indictment of charges" against him, and that she "should have known" through the course of discovery and the pandemic that "Plaintiff would suffer incarceration for eighteen months . . . in exchange for a misdemeanor plea for case disposal, only to dismiss the case nine months later."  (ECF No. 1-2, PageID #99; ECF No. 1-1, ¶ 55, PageID #16.)   But prosecutors are "entitled to absolute immunity for initiating a prosecution and . . . presenting the state's case," which is all that Plaintiff alleges the prosecutor did here. *See Lomaz v. Hennosy*, 151 F.3d 493, 499 (6th Cir. 1998) (quoting *Imbler*, 424 U.S. at 430) (cleaned up).  Plaintiff's complaint, even read generously and construed in Plaintiff's favor, does not allege that the prosecutor engaged in conduct that removed her from the protections of absolute immunity.  All she did was prepare for and initiate judicial proceedings against Mr. Dunn.  Therefore, she is entitled to absolute prosecutorial immunity against the claims Plaintiff brings against her in her individual capacity.

\*     \*     \*

For these reasons, the Court **GRANTS** the motion to dismiss of Ms. Graham and Judge Gaul.

## II.     The Officers' Motion to Dismiss

Plaintiff alleges that the remaining Defendants, Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams, are liable in their official and individual capacities under Section 1983 for alleged violations of Plaintiff's Fourth and

11

Fourteenth Amendment rights.  (ECF No. 1-1, ¶¶ 28–52 & 69–92, PageID #11–15 & 19–26.)  To state a claim under Section 1983, Plaintiff must allege:  (1) "a right secured by the United States Constitution;" and (2) "the deprivation of that right;" (3) "by a person acting under color of state law."  *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (abrogated on other grounds)).  Defendants do not dispute that they were acting under color of state law.  Therefore, this motion to dismiss turns on whether Plaintiff alleges that each Defendant deprived him of a constitutional right.

Defendants argue that Plaintiff fails to state a claim on which relief can be granted for false arrest and false imprisonment (Counts 1–3), as well as malicious prosecution (Counts 6–8).  (ECF No. 3, PageID #133–37.)  Further, Defendants maintain that they are entitled to qualified immunity in their individual capacities and that Plaintiff fails to plead facts giving rise to liability against them in their official capacities.  (ECF No. 3, PageID #137–42.)

### II.A.   False Arrest / False Imprisonment

The Fourth Amendment affords the people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV.  When he was arrested, Plaintiff was seized within the meaning of the Fourth Amendment.  *Torres v. Madrid*, 592 U.S. 306, 311 (2021).  This seizure must be reasonable under the Fourth Amendment.  U.S. Const. amend. IV.  If an arrest is not "'based on probable cause' to believe that the individual has committed a crime," then it is "unreasonable."  *Bailey v. United States*, 568 U.S. 186,

192 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). This probable cause standard "applies to all 'seizures' up to the jury trial." *Jones v. Clark Cnty.*, 959 F.3d 748, 770 (6th Cir. 2020) (Murphy, J., concurring in part and dissenting in part) (citing *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 369 n.8 (2017)).

Section 1983 does not make an unreasonable seizure actionable by itself. Courts "look to the elements of the most analogous tort as of 1871 when § 1983 was enacted" to "determine the elements of a constitutional claim under § 1983." *Thompson v. Clark*, 596 U.S. 36, 43 (2022); *Heck v. Humphrey*, 512 U.S. 477, 483 (1994). At common law, false arrest and malicious prosecution are the most analogous torts to an unreasonable seizure of a person. *Heck*, 512 U.S. at 484. False arrest and malicious prosecution are distinct common law torts. False arrest applies to detention without legal process, while malicious prosecution applies to "confinement imposed pursuant to legal process," such as an arrest warrant or indictment. *Id.* False arrest and malicious prosecution provide apt analogies because they represent "specific versions of a general unreasonable-seizure claim alleging the same *constitutional* theory: that the officers seized . . . [Plaintiff] without probable cause." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161 (6th Cir. 2021). Under Section 1983, "the general 'common law of torts'" bridges the gap between a constitutional right and the elements of a cause of action. *Id.* (citing *Manuel*, 580 U.S. at 370).

False arrest and false imprisonment claims against officers "are essentially the same" because "the alleged false imprisonment arises out of and logically follows the

13

arrest" of the plaintiff.  *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (citations omitted).  To establish a false arrest claim under federal law, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).  A showing of probable cause "provides a complete defense to a claim of false arrest."  *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (quoting *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014)).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

Determining probable cause depends on "the facts and circumstances" within the officers' knowledge, of which they "had reasonably trustworthy information sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Id.* (quoting *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015).  While officers "must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 415–16 (6th Cir. 1998).

Officers must take account of "both the inculpatory *and* exculpatory evidence" to determine probable cause under the totality of the circumstances. *Wesley*, 779 F.3d at 429 (quoting *Gardenhire*, 205 F.3d at 318).  In making this determination, officers cannot "ignore information which becomes available in the course of routine

investigations." *Id.* (quoting *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002).

"[A] crime victim's accusation standing alone can establish probable cause." *Huffer v. Bogen*, 503 F. App'x 455, 460 (6th Cir. 2012) (quoting *Gardenhire*, 205 F.3d at 322).

An arrest that does not result in a conviction "does not necessarily mean that the arrest itself was unlawful." *Giannini v. Erie Cnty., Ohio*, No. 3:15-cv-01379, 2016 WL 659894, at *3 (N.D. Ohio Feb. 18, 2016).

*    *    *

Plaintiff alleges that Defendants falsely arrested and imprisoned him. Counts One and Two allege that Officers Pietraszkiewicz and Marincek "lacked probable cause for his warrantless arrest . . . on December 18, 2019." (ECF No. 1-1, ¶¶ 31 & 39, PageID #11–12.) Further, Plaintiff claims that he "was detained and held . . . against his will and without lawful justification on January 31, 2020, through the time he was released after his arrest." (*Id.*) Yet Plaintiff's statement of facts makes no mention of any arrest on December 18, instead writing that "Plaintiff was arrested and jailed in the Cuyahoga County Corrections Center" on January 31, 2020. (*Id.*, ¶ 22, PageID #10.) Defendants do not dispute either arrest date in any of their pleadings, instead contesting probable cause. (ECF No. 3, PageID #134.) According to the police report from December 19, 2019, which Plaintiff attached to his brief, Sergeant Williams "completed and filed with the clerk of court a registered warrant for the arrest of Michael Dunn for the crime of Domestic Violence" that same day. (ECF No. 6-3, PageID #188.) Because the pleadings identify three distinct "arrest dates," the Court addresses probable cause for each in turn.

15

### II.A.1. The Initial Investigation

Ohio law embodies a "preferred arrest policy in domestic violence situations." *Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir. 2003). Where an officer in Ohio has "reasonable grounds to believe that the offense of domestic violence . . . has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, it is the preferred course of action in this state that the officer arrest and detain that person." *Id.* (quoting Ohio Rev. Code § 2935.03(B)(3)(b)).

Under Ohio law, no person shall "knowingly" or "recklessly" cause "physical harm to a family or household member" or cause such a person "to believe that the offender will cause imminent physical harm" with the "threat of force." Ohio Rev. Code §§ 2919.25(A)–(C). Although the alleged victim in Plaintiff's criminal matter is his ex-girlfriend, courts in the Sixth Circuit have found that officers have probable cause for an arrest for domestic violence involving persons in former relationships. *See, e.g.*, *Scott v. City of Bexley*, 11 F. App'x 514, 515 (6th Cir. 2001) (determining that probable cause existed after the plaintiff drove to the home of his former girlfriend and caused her to believe that he might break her door down).

In this case, Plaintiff alleges that when Officers Pietraszkiewicz and Marincek arrived at his ex-girlfriend's residence, she told them that Mr. Dunn had "just assaulted her" after he entered her home. (ECF No. 1-1, ¶¶ 8–9, PageID #8.) She claimed that she and Plaintiff "began an argument" and "began shoving each other." (*Id.*, ¶¶10–11, PageID #8.) Further, she claimed that "Plaintiff allegedly grabbed her by her hair and started choking her," and that she chased him out of her home with

16

a four-foot carpenter's level after pouring hot sauce on him.  (*Id.*, ¶¶ 11–12, PageID #8–9.)

Plaintiff contends that Officers Pietraszkiewicz and Marincek "would or should have known upon investigating the incident" that the alleged victim "(1) refused EMS, (2) appeared to be intoxicated and was slurring her words, (3) had no apparent signs of injury, and (4) [her] story was also inconsistent as she was describing what occurred."  (ECF No. 6, PageID #182–83.)  The totality of these facts and circumstances provides the officers with probable cause, as a matter of law.  They provide "reasonable grounds to believe" that Mr. Dunn knowingly or recklessly caused physical harm to a family or household member.  Ohio Rev. Code §§ 2919.25(A)–(C); *Thacker*, 328 F.3d at 256.

The police report confirms these observations.  (ECF No. 6-1, PageID #185.)  Also, it shows that Defendants "articulate[d] concrete facts from which they infer[red] a probability that illegality ha[d] occurred."  *Strickland*, 144 F.3d at 415; *see also, e.g.*, *Scott*, 11 F. App'x at 515; *Bringman v. Village of Fredericktown*, No. 16-4295, 2017 WL 5564675, at *2 (6th Cir. June 29, 2017) (finding that a reasonable officer would find probable cause existed where the alleged victim stated that the plaintiff "shoved her in the back and caused her to fall to the ground").

Plaintiff relies on a general police order by the Cleveland Division of Police which states that City policy requires that the police "shall thoroughly investigate any incident of domestic violence and in cases where there is evidence of domestic violence, members shall arrest the primary physical aggressor ensuring compliance

17

with" Ohio law.  (ECF No. 6, PageID #181; ECF No. 6-4, PageID #189.)  Plaintiff makes no argument how this police order undermines probable cause.  At the time of the initial investigation, the facts—construed in Plaintiff's favor—provided reasonable grounds to believe that Mr. Dunn had engaged in domestic violence. Therefore, Officers Pietraszkiewicz and Marincek had probable cause to arrest Mr. Dunn.  *See Voyticky*, 412 F.3d at 677.

## II.A.2. The Grand Jury's Indictment

In Count Three, Plaintiff alleges that Sergeant Williams "lacked probable cause to present charges to the Cuyahoga County Prosecutor's Office which resulted in the indictment . . . against Plaintiff." (ECF No. 1-1, ¶ 47, PageID #14.)  As a result, Plaintiff claims that he "was detained and held, against his will and without lawful justification on January 31, 2020, through the time he was released after his arrest." (*Id.* ¶ 48, PageID #14.)

Generally, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)).  Similarly, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky*, 412 F.3d at 677 (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)).

A plaintiff may rebut an indictment's presumption of probable cause where he can demonstrate: "(1) a law enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements or falsifies or

18

fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand jury testimony or preparation for that testimony." *King v. Harwood*, 852 F.3d 586, 587–88 (6th Cir. 2017). In short, where the defendant fabricates evidence or knowingly or recklessly makes a materially false statement outside of the grand jury, a plaintiff may rebut the presumption of probable cause. *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021). But absolute immunity protects grand jury testimony, as well as the "preparatory activity" of a witness who testifies before the grand jury. *Id.* (quoting *Rehberg v. Paulk*, 566 U.S. 356, 370 (2012)); *see also King*, 952 F.3d at 587–88.

Sergeant Williams does not raise absolute immunity for grand jury testimony or any preparatory activity as a defense. Absolute immunity in this context "must be affirmatively pleaded, or it is forfeited." *Id.* (quoting *Parnell v. City of Detroit*, 786 F. App'x 43, 47 n.3 (6th Cir. 2019)). Therefore, Sergeant Williams forfeited this defense, and the Court will proceed with analysis of Plaintiff's claim.

"[F]ailing to disclose potentially exculpatory evidence differs from affirmatively falsifying evidence." *Id.* (quoting *Costino v. Anderson*, 786 F. App'x 344, 348 (3d Cir. 2019)). In *Lester*, the plaintiff attempted to rebut the presumption of probable cause arising from his indictment by arguing that the detective "recklessly failed to disclose" problems with a witness's statements. 986 F.3d at 608. The Sixth Circuit concluded that "this purported 'omission' of exculpatory evidence (as opposed

to affirmative 'false statements') may not suffice to defeat this presumption." *Id.* (quoting *King*, 852 F.3d at 587) (cleaned up).  Sergeant Williams's report does not include the details from the officers' police report that the alleged victim appeared to be intoxicated, had no apparent signs of injuries, and gave an inconsistent story. (ECF No. 6-1, PageID #185; ECF No. 6-3, PageID #188.)  However, the police report indicates that Sergeant Williams "spoke to the [alleged] victim" and "took photos of her injuries." (ECF No. 6-3, PageID #188.)  This is the sort of evidence that supports probable cause.  *See Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 528 (6th Cir. 2009) (citing *Thacker*, 328 F.3d at 257).  Plaintiff fails to allege that Sergeant Williams falsified or fabricated evidence or knowingly or recklessly made false statements.  To the contrary, crediting Plaintiff's allegations and taking them as true in the present procedural posture, the record shows that Sergeant Williams conducted his own investigation and drew his own conclusions.  In his view, the evidence sufficed to establish probable cause, and a grand jury agreed.

Plaintiff relies on inconsistencies in the story of the victim and other evidence. He contends that Sergeant Williams "would or should have known that with further investigation," and, coupled with the police report stating that the alleged victim appeared intoxicated and made inconsistent statements, that "Defendants violated the Plaintiff's clearly established constitutional right."  (ECF No. 6, PageID # 183.) As the Sixth Cirucit has noted, "alleged inconsistencies, even considered collectively, do not show the absence of probable cause." *Lester*, 986 F.3d at 611.  "Once probable cause is established, an officer is under no duty to investigate further or to look for

additional evidence which may exculpate the accused." *Id.* (quoting *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999)).

Because the Court finds that Sergeant Williams did not "knowingly or recklessly make false statements or falsifie[d] or fabricate[d] evidence," the Court need not reach whether such statements were material to Plaintiff's ultimate prosecution. *King*, 852 F.3d at 587–88. As a matter of law, Plaintiff has not rebutted and cannot rebut the presumption of probable cause from his indictment. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims for false arrest and false imprisonment against Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams.

### II.B.  Malicious Prosecution

In Counts Six through Eight, Plaintiff brings claims for malicious prosecution. (ECF No. 1-1, ¶¶ 69–76, PageID #19–23.) He alleges that Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams "instituted criminal prosecution, charges and/or proceedings against Plaintiff, maliciously in violation of his rights guaranteed under the Fourth and Fourteenth Amendments." (*Id.*, ¶¶ 71, 79, 87, PageID #19–20 & 22.)

Malicious prosecution occurs where:  "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb*, 789 F.3d at 659 (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)). Defendants do not

contest the latter two elements, focusing instead on the first two. (ECF No. 3, PageID #135–37.) For his part, Plaintiff argues that Defendants sought an indictment and arrest warrant despite lacking probable cause. (ECF No. 6, PageID #181–83.) Accordingly, the inquiry focuses on: (1) whether each Defendant individually participated in the decision to prosecute, and (2) whether probable cause to prosecute did not exist.

However, the same probable cause principles apply to malicious prosecution and false arrest. *See Weser v. Gordon*, 965 F.3d 507, 513 (6th Cir. 2020). Claims for malicious prosecution and false arrest claims proceed analytically on a "parallel course." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 642–43 (6th Cir. 2020). Because the Court already concluded that probable cause supported Mr. Dunn's indictment, that analysis disposes of his claims for malicious prosecution under Section 1983. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's malicious prosecution claims against Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams.

### II.C. Official Capacity Claims

Finally, Plaintiff brings suit against Defendants in their official capacities. Plaintiff did not respond to Defendants' argument that the official-capacity claims against them fail as a matter of law. (*Compare* ECF No. 3, PageID #139–42, *with* ECF No. 6, PageID #175–83.) Because Plaintiff failed to respond to Defendants' argument, the Court finds that he has abandoned his official-capacity claims.

22

\*      \*      \*

For these reasons, the Court **GRANTS** the motion to dismiss of Officer Pietraszkiewicz, Officer Marincek, and Sergeant Williams.

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss (ECF No. 1-2, PageID #75; ECF No. 6, PageID #170).

**SO ORDERED.**

Dated:  January 23, 2025

_____
        J. Philip Calabrese
        United States District Judge
        Northern District of Ohio

23